<u>NOT FOR PUBLICATION</u>                    [Docket Nos. 61 & 62]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

NAIK, et al.,

                Plaintiffs,

     v.

7-ELEVEN, INC.,

             Defendant.

Civil No. 13-4578 RMB/JS

**OPINION**

---

APPEARANCES:

Gerald A. Marks, Esq.
Louis D. Tambaro, Esq.
Evan M. Goldman, Esq.
MARKS & KLEIN, LLP
63 Riverside Avenue
Red Bank, New Jersey 07701
Attorneys for Plaintiffs

Stephen Sussman, Esq.
DUANE MORRIS LLP
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08003
Attorneys for Defendant

**BUMB**, United States District Judge:

    This matter comes before the Court upon a Motion by

Defendant, 7-Eleven, Inc. ("Defendant") to Dismiss Plaintiffs'

Second Amended Complaint [Docket No. 61] and Defendant's Motion

to Strike certain paragraphs in Plaintiffs' Second Amended
Complaint [Docket No. 62].  For the reasons set forth below,
Defendant's Motion to Dismiss shall be granted in part and denied
in part, and Defendant's Motion to Strike shall be denied.


## I.   Background[1]

Per the Second Amended Complaint ("SA Complaint"),
Plaintiffs, Neil Naik, Hemang Patel, Jayesh Patel and Kalpana
Patel, are franchisees of Defendant, having each entered into a
Store Franchise Agreement[2] (the "Franchise Agreement" or "FA").
[SA Compl. at ¶ 12].  Plaintiffs contend that despite being
designated by Defendant as "franchisees" and "independent
contractors," the economic reality of the relationship is that
the Plaintiffs are employees of Defendant, and, therefore, they
are entitled to the protections under the Fair Labor Standards

---

[1] This Court will accept the Plaintiffs' well-pled
allegations as true for purposes of this motion to dismiss.  See
Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

[2] Because Plaintiffs' allegations rely on the provisions of
the Franchise Agreement, it is proper for this Court to consider
that agreement on this Motion to Dismiss despite the fact that
Plaintiffs did not attach it to their SA Complaint.  See Pension
Ben. Guar. Copr. v. White Consol., Indus. Inc., 998 F.2d 1192,
1196 (3d Cir. 1993) ("a court may consider an undisputedly
authentic document that a defendant attaches as an exhibit to a
motion to dismiss if the plaintiff's claims are based on the
document.").

Act ("FLSA"), 29 U.S.C. §§ 201-219 et seq., the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. §§ 34:11-56a – 34:11-56a38, and the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-12.

Averring they are, in fact, employees, Plaintiffs contend that Defendant's supervisory employees have acted in a discriminatory and hostile manner towards the Plaintiffs by harassing them on the basis of their Indian descent, utilizing intimidating and bullying tactics, making unannounced visits to stores, and targeting Plaintiff's with faux investigations. [SA Compl. at ¶¶ 69, 72, 73, 76-87].

In addition, Plaintiffs contend that Defendant is bound by the terms of the FA to provide them with operational systems to meet the needs of customers and ongoing training as to those systems under Paragraph 4(b) of the FA. Plaintiffs further aver that Defendant failed to provide technical support or any meaningful training in violation of the FA after installing a new ordering system and security system. Moreover, Defendant allegedly works to make business conditions so hostile in order to effectively force Plaintiffs to terminate their FAs. [SA Compl. at ¶¶ 24-26]. For example, Plaintiffs contend that the security system was intended to record Plaintiffs' conduct as a

3

basis of intimidation and that Defendant controls all aesthetic aspects of their stores including radio volume, television channel, and level of heat and air conditioning, which causes Plaintiffs to lose customers.  [Compl. at ¶29-34].  Defendant also allegedly fails to respond to Plaintiffs' maintenance calls to fix broken equipment.

Plaintiffs state that Defendant has negotiated prices on items that are higher than the vendor would sell to other retail establishments in the area and that Defendant forces purchases upon Plaintiffs.  [SA Compl. at ¶¶ 41-44 & 51-54].  Such artificially high prices make profits "non-existent" on those products.  In the same vein, Plaintiffs state that Defendant has failed to pay them appropriate "bill backs" – money for meeting certain goals in selling a vendor's product – because Defendant "has made it virtually impossible for Plaintiffs to reconcile the accounts provided by [Defendant] to determine the proper bill back calculation."  [SA Compl. at ¶ 48].[3]

---

[3] In a supplementary submission, Docket No. 75, Plaintiffs ask this Court to take judicial notice of a certification by Kurt McCord.  "A court may take judicial notice of 'a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' Feingold v. Graff, 516 Fed. Appx. 223, 225 (3d Cir. 2013)(quoting Fed. R. Evid. 201(b)). Because this certification seeks to establish facts that are central to the

## II.  Standard

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 663.  "[A]n unadorned, the-defendant-unlawfully harmed-me accusation" does not suffice to survive a motion to dismiss.  Id., 566 U.S. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as

---

underlying dispute in this case, and which cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, judicial notice is improper.

all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352 n.1 (3d Cir. 2012). Only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)(citing Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

## III. **Analysis**

### a. **New Jersey Wage and Hour Law & Fair Labor Standards Act**

Plaintiffs assert claims for unpaid wages and minimum wages under the NJWHL and FLSA, Counts 1 and 3 respectively, and for overtime wages pursuant to these statutes, Counts 2 and 4.  The NJWHL and FLSA are substantially similar: "[t]he FLSA and its state-law counterpart, the New Jersey Wage and Hour Law, allow employees to sue their past or present employers for various employment-related causes of action."  Thompson v. Real Estate Mortgage Network, No. 12-3828, 2014 U.S. App. LEXIS 6150, at *7-8 (3d Cir. Apr. 3, 2014).  Under both the FLSA and the NJWHL, the

first relevant inquiry is whether the Plaintiffs have alleged an actionable employer-employee relationship.

Plaintiffs present the following facts in support of their contention that they are employees of Defendant, and, therefore entitled to the protections of the FLSA and the NJWHL.

- Defendant asserts a high level of control over the regulation of vendors and supply and regulates product pricing, advertising and promotional items;
- Payroll is processed through Defendant's internal payroll system;
- Plaintiffs are required to wear Defendant's uniforms in store and at off-site events and are subject to "intense daily oversight" by Defendant's managers;
- Plaintiffs cannot control the volume of their televisions, air conditioning or heat in their stores – Defendant controls the same from corporate headquarters;
- Plaintiffs cannot own active business interests in other business entities;
- Bookkeeping and accounting are all done by Defendant and Plaintiffs cannot withdraw money without Defendant's approval;
- Plaintiffs are unable to control the maintenance of the equipment in their stores;
- "The relationship between Plaintiffs and [Defendant] was set for a duration of years, and despite [Defendant's] now-constructive termination, the relationship has/had a degree [of] permanency to it"; and
- Defendant would be unable to operate in the manner it does without Plaintiffs.

SA Compl. at ¶¶ 60-67.

Defendant argues that Plaintiffs have failed to properly allege that they are employees of Defendant under either the FLSA or NJWHL, and the terms of the FA itself clearly and unambiguously dictate that Plaintiffs are not employees – specifically, the FA states in a section entitled "Independent Contractor" – "You and we agree that this Agreement creates an arm's-length business relationship and . . . [y]ou and your agents and employees may not: (i) be considered or held out to be our agents or employees." FA - Docket No. 61-3 at ¶ 2. Finally, Defendant avers, relying heavily on a previous version of Plaintiffs' Complaint, that, even if Plaintiffs are employees, they are exempt from coverage under the relevant statutes as "managers" and are thus not entitled to overtime.

  *(i)  *<u>*NJWHL*</u>*: Count One: Unpaid Wages & Count Two: Overtime*

As an initial matter, this Court notes that resolution of Defendant's motion to dismiss as to the NJWHL counts requires this Court to determine the appropriate test for whether an individual is to be deemed either an independent contractor or an employee. At this juncture, this is an unsettled question as the New Jersey Supreme Court has  accepted certification of this exact question.  <u>See</u> <u>Hargrove v. Sleepy's LLC</u>, 214 N.J. 499 (2013)("Under New Jersey law, which test should a court apply to

8

determine a plaintiff's employment status for purposes of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1, et seq., and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a, et seq.?"). Because this issue is unsettled, and is fundamental to the resolution of the instant motion to dismiss Plaintiffs' NJWHL claims, this Court will deny Defendant's motion to dismiss Plaintiffs' NJWHL claims without prejudice out of an abundance of caution.  See Adami v. Cardo Windows, Inc., No. 12-2804, 2014 U.S. Dist. LEXIS 10805 at *42 (D.N.J. Jan. 29, 2014)(denying motion for class certification without prejudice pending resolution of test to determine whether an individual is an employee under the NJWHL).[4]

---

[4] Defendants alternatively call upon this Court to dismiss Plaintiffs' NJWHL and FLSA claims because Plaintiffs are "executives" or "managers," based on allegations largely contained in Plaintiffs' First Amended Complaint.  At this juncture, this Court will not entertain this argument as the allegations in Plaintiffs' Second Amended Complaint do not provide sufficient information to make this determination at this juncture and because Defendant bears the burden on demonstrating that the exemption applies.  See Kelly v. Borough of Union Beach, No. 10-4124, 2011 U.S. Dist. LEXIS 12839, at *9-11 (D.N.J. Feb. 8, 2011)(noting that the defendants bear the burden of demonstrating that plaintiff fell under and FLSA exemption and declining to dismiss plaintiff's FLSA claim where key factors regarding an exemption could not be established at the early motion to dismiss stage of the litigation).

(ii)    _FLSA_

While the FA characterizes the parties' relationship as one of franchisor/independent contractor, that language is not dispositive of the issue.  Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. §203(e)(1).  To "employ" means to "suffer or permit to work." Id. at § 203(g). The Third Circuit has noted that

> the breadth of these definitions is both intentional and obvious: When determining whether someone is an employee under the FLSA, "economic reality rather than technical concepts is to be the test of employment." Under this theory, the FLSA defines employer "expansively," and with "striking breadth." The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is "the broadest definition that has ever been included in any one act."

Thompson, 2014 U.S. App. LEXIS 6150, at *9 (quoting In re Enterprise Rent-A-Car Wage & Hour Emp't Prac. Litig., 683 F.3d 462, 467-68 (3d Cir. 2012) (citations omitted)).

In determining whether an individual is an employee or independent contractor under the FLSA, the "Supreme Court has instructed courts to look to the 'circumstances of the whole activity' to determine whether an employment relationship exists." Adami, 2014 U.S. Dist. LEXIS, at *23 (quoting Rutherford Food Corp. v. McComb, 331 U.S. 772, 730 (1947)).  The

10

Third Circuit has set forth six factors for courts to consider
when determining whether an individual is an employee under the
FLSA:

> (1) the degree of the alleged employer's right to control
> the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss
> depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or
> materials required for his task, or his employment of
> helpers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanence of the working relationship;
> and
> (6) whether the service rendered is an integral part of the
> alleged employer's business.

Martin v. Selker Bros., Inc., 949 F.2d 1286, 1293 (3d Cir. 1991).

In addition, this Court should consider "whether, as a matter of

economic reality, the individuals are dependent upon the business

to which they render service." Id. (citing Donovan v. DialAmerica

Mktg., Inc., 757 F.2d 1376, 1382-83 (3d Cir. 1985) (internal

quotations omitted)). "Neither the presence nor absence of any

particular factor is dispositive and . . . courts should examine

the 'circumstances of the whole activity.'" Donovan, 757 F.2d at

1382.

The Court will discuss these factors in turn mindful that

the question of whether a employer-employee relationship exists

11

is normally a question of fact for the jury,[5] and that, given the procedural status of this case, this Court is required to accept all well-plead allegations in the Complaint as true. See Bistrian, 696 F.3d at 358 n.1.  Based on the factors articulated by the Third Circuit in Martin, and mindful of the economic realities asserted by Plaintiffs, this Court finds that while the Plaintiffs could have provided a more comprehensive brief to this Court, the Plaintiffs have asserted sufficient factual allegations in the SA Complaint of employee status under the FLSA for the reasons stated below.

### 1) Employer's Right to Control

First, this Court finds that Plaintiffs have presented sufficient allegations under prong one of the six factor test with respect to the amount of control asserted by Defendant. Facts that are relevant to this inquiry pertain to, inter alia, "the degree of supervision over the worker, control over the worker's schedule and instruction as to how the worker is to perform his or her duties.  Li v. Renewable Energy Solutions, Inc., No. 11-3589, 2012 U.S. Dist. LEXIS 22312, at *18 (D.N.J.

---

[5] See Luxama v. Ironbound Express, Inc., No. 11-2224, 2013 U.S. Dist. LEXIS 90879, at *11 n.3 (D.N.J. June 27, 2013)("Luxama II").

Feb. 22, 2012).  Plaintiffs' SA Complaint is replete with factual allegations that Defendant asserted control over Plaintiffs' day-to-day operations.  While Plaintiffs have the express ability to hire their own employees as set forth in the FA, which weighs in favor of a finding that Plaintiffs are independent contractors, see Luxama v. Ironbound Express Inc., No. 11-2224, 2012 U.S. Dist LEXIS 99292, at *4 (D.N.J. June 28, 2012)(hereinafter "Luxama I"), this fact is mitigated by Plaintiffs' other factual allegations that point to pervasive control allegedly exercised by the Defendant.[6] For example, Plaintiffs aver that Defendant

- regulates vendors and supply, product pricing, advertising and promotional items;
- processes Plaintiffs' payroll via Defendant's internal payroll system;
- requires Plaintiffs to wear uniforms in store and at off-site events;
- subjects Plaintiffs to intense daily oversight including installation of a security system to record Plaintiffs' conduct;
- controls the volume of their televisions, air conditioning or heat in Plaintiffs' stores;
- prevents Plaintiffs from owning active business interests in other business entities;

---

[6] This Court agrees with Defendant, however, that the Massachusetts state court decision cited by Plaintiffs, Coverall v. Comm'r of the Div. of Unemployment Assn., 447 Mass. 852 (2006) is not relevant to this Court's analysis as that court did not apply the test relevant to the instant FLSA context.

- controls all bookkeeping and accounting, and requiring Plaintiffs to get approval before withdrawing money;
- controls maintenance of the equipment in Plaintiffs' stores and controlling marketing efforts and advertisements; and
- imposes fines on Plaintiffs as a means of controlling their activities.

SA Compl. at ¶¶ 29 & 60-62. This Court finds the above allegations sufficient to find that the first factor weighs in favor of categorizing Plaintiffs as employees. See Martin, 949 F.2d at 1294 (finding employer had significant and pervasive control where employer, inter alia, set the prices of gasoline, required operators to make daily sales reports and deposit previous day's receipts, visited each station regularly to oversee operations, and controlled the hours of operation and appearance of the stations); cf. Luxama I, 2012 U.S. Dist LEXIS 99292, at *11-13 (finding the defendant's degree of supervision and control over plaintiffs' schedule and how they should perform their duties was "minimal" where drivers alleged they were employees because they were told where to report to work, what they will be paid and where to pick up and deliver containers).

**2) Plaintiffs' Opportunity for Profit or Loss**

In order to satisfy the second factor, Plaintiffs must present sufficient allegations demonstrating that they did not

"face[] a real opportunity for either a profit or loss in their operations depending upon the amount of their investment and their skills in management." Donovan v. DialAmerica Mktg., Inc.,757 F.2d 1376, 1387 (3d Cir. 1985).  In making this assessment, this Court should consider whether Plaintiffs have alleged facts demonstrating whether their "income depends on factors beyond [their] control or whether it is impacted by [their] managerial skill[]." Zanes v. Flagship Resort Dev., LLC, No. 09-3736, 2012 U.S. Dist. LEXIS 22191, at * 17 (D.N.J. Feb. 22, 2012).

Defendant contends that the Plaintiffs' allegations, as confirmed by the FA, state that Plaintiffs, as franchisees, retain a share of their stores' gross profits of about 50% and that Plaintiffs stand to make or lose money depending on the performance of their store and their ability to manage it and the works they hire.  In their opposition brief, Plaintiffs contend that they "are wholly dependent on 7-Eleven for the opportunity to render services, meaning that Plaintiff's lack the opportunity for profit or loss depending on their skill." Pls.' Opp. Br. at 12.  Plaintiffs do not allege that they collect a salary from

15

Defendant regardless of the store's performance.[7]  Certainly, the fact that Plaintiffs' managerial skill, including their ability to hire and manage store employees, can impact their chances of profit and loss, weighs in favor of finding that Plaintiffs are independent contractors. See Luxama I, 2012 U.S. Dist. LEXIS 99292, at *14-15 (finding that that plaintiffs controlled their profits where they were not paid on a salary basis, controlled their working hours, could hire employees to assist with hauling cargo, and acquire additional trucks). In addition, the fact that Plaintiffs make a capital investment in the form of the Franchise Fee is another factor weighing in favor of deeming them independent contractors.  See Li, 2012 U.S. Dist. LEXIS 22312, at *20.[8]

While Plaintiffs only point to one paragraph of their Complaint with respect to this factor in their brief, paragraph

---

[7] The FA makes clear that Plaintiffs receive both a "Weekly Draw" and "Monthly Draw" from Defendant.  FA at ¶ 11.

[8] Defendant cites to Paragraph 10(a) of the Franchise Agreement in support of their argument that Plaintiffs' ability for profit and loss depends on their managerial skills.  This paragraph, however, deals with the "7-Eleven Charge" – i.e., the amount Plaintiffs are to pay 7-Eleven each period for use of the 7-Eleven license, and it is unclear how this supports Defendant's argument. Defendant does not expand on this paragraph of the FA, but merely cites it in support.

63,[9] this Court notes that several other allegations in the SA Complaint pertain to this issue, namely: Plaintiffs' allegations that the prices with Defendant's approved vendors, which are negotiated and established by Defendant, are higher than if Plaintiffs bought the same items on the open market, undercutting Plaintiffs' opportunities for profit.  See SA Compl. ¶¶ 41-44. Plaintiffs further allege that Defendant controls how and when "bill back" money from vendors (i.e., incentive funds for selling the vendors products) is paid to Plaintiffs, and that Defendant is not distributing the correct "bill back" amounts to Plaintiffs.  Id. at ¶¶ 46-50.  Plaintiffs also allege that Defendant "routinely, unreasonably and illegally forces purchases upon Plaintiffs . . . knowing that Plaintiffs are unable to sell those items."  Id. at 51.  Finally, Plaintiffs allege that Defendant intentionally or negligently miscalculates audit and merchandise reports and that such mistakes, even when rectified, "still affect Plaintiffs' gross profit and unfairly penalize Plaintiffs. . . ."  Id. at 57.

---

[9] Paragraph 63 states: "Plaintiffs are wholly dependent on 7-Eleven for the opportunity to render services.  By way of example, Plaintiffs are unable to control the maintenance of the equipment in their stores, the volume on the television, etc., and thus, are not in business for themselves."

Certainly, if this Court were only to look at the paragraph cited in the Plaintiffs' Opposition Brief, it would be difficult to find that they have set forth sufficient allegations to satisfy the second factor.  However, examining the Plaintiffs' allegations in toto presents a closer call.  Mindful that this Court should "consider whether the worker's income depends on factors beyond his control or whether it is impacted by the worker's managerial skills,"[10] this Court finds that this factor is neutral as there are sufficient opportunities for profit and loss as presented in the FA, but Plaintiffs present allegations that the Defendant's conduct undercuts those opportunities through pervasive control.  See Martin, 949 F.2d at 1294 (finding that station operators had no meaningful opportunities for profit or rusk of financial loss because business did not depend upon their managerial skills and earnings tied primarily to fixed commission instead of price level and profit margins).

### 3) Employees' Investment in Equipment

"The third factor considers 'the alleged employee's investment in equipment or materials required for his task, or

---

[10] Luxama v. Ironbound Express, Inc., No. 11-2224, 2013 U.S. Dist. LEXIS 90879, at *15 (D.N.J. June 27, 2013)("Luxama II")(quoting Zanes v. Flagship Resort Dev., LLC, No., 09-3736, 2012 U.S. Dist. LEXIS 22191 (D.N.J. Feb. 22, 2012).

his employment of helpers.'" <u>Luxama II</u>, 2013 U.S. Dist. LEXIS 90879 at *18 (finding that the fact that plaintiff drivers hold an equity interest in their trucks – the most valuable equipment needed for their services – weighs heavily in favor of finding independent contractor status).  Defendant argues that Plaintiffs do not aver that they are not required to invest in their franchise and that the SA Complaint concedes that franchises must pay the initial franchise fee and invest in franchise employees to run the stores.  Plaintiffs respond, stating that they are required to make an investment, but that Defendant controls and maintains all equipment and is responsible for, <u>inter</u> <u>alia</u>, sound, lighting, temperature, advertising and promotions.

     The Court finds that the express allegations of Plaintiffs' SA Complaint support a finding that they have made a substantial investment in the "materials required for their task" – <u>see</u> <u>e.g.</u>, SA Compl. at ¶ 158-59 "each Plaintiff paid to Defendant a franchise fee . . . in a range of $100,000-$150,000. . .[and,] Plaintiffs have made substantial franchise-specific investments within each store. . . ."  As such, this Court finds that the third factor weighs in favor of finding Plaintiffs to be independent contractors based on the allegations in the SA Complaint.  <u>Cf.</u>, <u>Martin</u>, 949 F.2d at 1294-95 (finding no

19

significant investment where station operators had no capital

investment in gasoline, the largest item in value carried by the

service stations).

### 4) Special Skill

The fourth factor requires this Court to consider whether

the SA Complaint contains allegations regarding special skills.

A finding that a worker requires special skill to complete their

tasks or services weighs in favor of a finding that the worker is

an independent contractor.  See Luxama I, 2012 U.S. Dist. LEXIS

99292, at *17 (finding that the need for a commercial driver's

license constituted a "special skill" and weighed in favor of

classifying drivers independent contractors).  Defendant points

out that the SA Complaint contains no allegations regarding

special skills.  In response, Plaintiffs merely respond: "[t]here

is no allegation that Plaintiffs possess any requisite and/or

'special skill' because Plaintiffs do not possess same. . . ."

Pls.' Opp. Br. at 12.

As an initial matter, Plaintiffs cannot supplement the

allegations in their SA Complaint with the arguments contained in

their briefs.  See Pennsylvania ex rel. Zimmerman v. Pepsico,

Inc., 836 F.2d 173, 181 (3d Cir. 1988)("It is axiomatic that the

complaint may not be amended by the briefs in opposition to a

motion to dismiss.").  To the extent the Plaintiffs cite the absence of specific allegations of special skill, the allegations in the SA Complaint point to facts that weigh in favor of classifying Plaintiffs as independent contractors.  For example, Plaintiffs are the in-store operators of their franchises, ¶¶ 5-8, who purchase store inventory, ¶ 18.  These allegations, coupled with Plaintiffs' ability to hire employees under the FA,[11] weigh in favor of classifying Plaintiffs as independent contractors.  See Donovan, 757 F.2d at 1387 (finding that distributors employed special skills to do their work where they "needed to possess some degree of managerial skill to ensure that their revenues exceeded expenses," had to keep records so that proper payments could be made, and exercised "business-like initiative" in persuading others to become distributees).

**5) Degree of Permanence of the Working Relationship**

With respect to the degree of permanence of the working relationship factor, courts should consider the exclusivity, length and continuity of the relationship.  Zanes, 2012 U.S. Dist. LEXIS 22191 at *18.  Where workers work for a purported

---

[11] The FA also states in Section 1(a)(5) that "You [referring to Plaintiffs] understand that an investment in the store involves business risks and that your abilities and efforts are vital to the success of the Store."

21

employer exclusively and for a continuous period of time, this factor will be found to weigh in favor of classifying workers as employees.  See e.g., Marvin, 949 F.2d at 1295 (upholding district court's finding that this factor weighed in favor of classifying gas station operators as employees where the operators worked exclusively for the employer and their tenure had "the length and continuity characteristic of employment.").

The sole allegation in Plaintiffs' SA Complaint with respect to this factor states: "The relationship between Plaintiffs and Defendant was set for a duration of years, and despite 7-Eleven's now-constructive termination, the relationship has a degree of permanency to it."  SA Compl. at ¶ 66.  Defendant contends that this is a mere conclusory allegation is insufficient under Iqbal and contrary to the terms of the FA which states that the franchisee may terminate the FA at any time and for any reason upon 72 hours' written notice.  FA at ¶ 27.[12]

That said, the FA demonstrates that the initial lease was for a period of approximately four years, giving the Defendant

_____

[12] In their opposition brief, Plaintiffs assert that because the FA's are terminable at-will, they should be treated like at-will employees, entitled to the FLSA's protections. Again, additional allegations cannot be added to a complaint via an opposition brief.  See Pennsylvania ex rel. Zimmerman, 836 F.2d at 181).

two options to extend the lease for a term of five years for each
option.  FA at Ex. A.  In addition, the FA contains a
"noncompetition" clause – FA ¶ 5(d) – which prevents Plaintiffs
from operating or having an interest in a "competitive business"
within a half mile radius, with certain exceptions.  Based on the
contents of the FA, this factor weighs in favor of classifying
Plaintiffs as employees. See Luxama I, at 18-19 (finding that
this factor weighed in favor of employee status where plaintiffs
were precluding from working for any company other than the
defendant and relationship between the parties had a long history
of continuity despite brief language contained in lease agreement
between the parties); Zanes, 2012 U.S. Dist. LEXIS 22191, at *19
(finding that this factor weighed in favor of an employer-
employee relationship where worker had a non-compete agreement
"which prohibited him from competing directly or indirectly
during the course of his employment and for one year after.").

   **6) Service as Integral to Employer's Business**

   With respect to the sixth factor, "[t]he critical
consideration . . . is the nature of the work performed by the
workers: does that work constitute an 'essential part' of the
alleged employer's business?" Martin, 949 F. 2d at 1295.  In
their SA Complaint, Plaintiffs allege that they are "integral to

the 7-Eleven system and, but for Plaintiffs, 7-Eleven would be
unable to operate in a manner similar to the one in which it
currently operates." SA Compl. at ¶ 67. In response, the
Defendant argues that Plaintiffs' allegation is purely conclusory
and merely parrots the legal test. A review of all of the
allegations in the SA Complaint, coupled with the FA Agreement
relied upon therein, however, reveals that Plaintiffs are
integral to Defendant's business and that this factor weighs in
favor of classifying Plaintiffs as employees.  It is unclear how
Defendant could run their business at all without its
franchisees.  See Martin, 949 F.2d 1295 (finding that gas
stations run by commissioned station operators were integral to
defendant's business of distributing and selling gasoline);
Donovan, 757 F.2d 1385 (finding that home researchers, who were
engaged in the location of phone numbers, were an integral part
of defendant's business where the primary work of defendant was
locating phone numbers of people and placing calls to sell
particular products); Luxama I, (finding that this factor weighed
in favor of finding and employee-employer relationship where
defendant was in the business of transporting cargo and
plaintiffs' leased their trucks and driver services to

24

defendant).  Thus, a finding that Plaintiffs have sufficiently pled that they are integral to Defendant's business is warranted.

### 7) Economic Reality

In addition to the six factors discussed above, this Court must review the circumstances of the whole activity and "whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service."  <u>Martin</u>, 949 F.2d at 1293. Plaintiffs allege that despite the language in the FA stating that they are independent contractors, the economic reality of the relationship is that Defendant controls all aspects of Plaintiffs' business. In response, Defendant states that many of Plaintiffs allegations of "control" – e.g., regulation of vendors, equipment maintenance, product supply, uniforms, and implementing a standardized store environment constitute quality control measures franchises are expected to employ to ensure uniformity.  <u>See</u> <u>Howell v. Chick-Fil-A, Inc.</u>, No. 92-30188, 1993 U.S. Dist. LEXIS 19030 at *8 (N.D. Fl. Nov. 1, 1993)(finding that tight control over food preparation methods and presentation of a unique standard product in a fast food franchise is essential and "does not make the restaurant operator or manager an employee.").

25

Plaintiffs' allegations, however, go beyond mere uniformity measures.  Instead, Plaintiffs contend that their opportunities for profit or loss and the discretion to run their franchises are undercut by the Defendant's control and standards.  In other words, they allege facts that depict an economic reality of dependence on Defendant.  As such, this Court finds that Plaintiffs have alleged an economic reality indicating an employer-employee relationship.  See Martin, 949 F.2d at 1296 (finding that, as a matter of economic reality, gas station operators were depended on defendant); Li, 2012 U.S. Dist. LEXIS 22312, at *26 (finding that the total economic reality weighed in favor of finding an employer-employee relationship where plaintiff relied entirely on defendant for his income and livelihood).

In light of the above factors, Plaintiffs' FLSA claim will survive the instant motion to dismiss.


b. **New Jersey Law Against Discrimination (Count 5 & 7)**

Plaintiffs assert two separate claims pursuant to the New Jersey Law Against Discrimination ("LAD"): Count 5 claiming Plaintiffs have been discriminated against as employees of Defendants and Count 7, pled in the alternative, that Plaintiffs

26

have been discriminated against as independent contractors as
prohibited by N.J.S.A. 10:5-12(l).  The factual allegations
underlying these Counts are nearly identical:

- Plaintiffs are of Indian descent;
- Defendant disrupts Plaintiffs' daily operations with
  "intimidation" and "bullying";
- The Zone Leader – Fareed Siddiqui - is from Pakistan
  and "[u]pon information and belief, the relationship
  between Pakistanis and Indians is one of hostility and
  hatred;"
- Mr. Siddiqui and Defendant's "Executives" and
  "Managers" "harass Plaintiffs on account of their being
  of Indian descent" via "unannounced visits" and "faux
  investigations";
- Mr. Siddiqui and other "Managers" do not treat non-
  Indians in the same or similar manner and this
  treatment is "a direct and proximate result of their
  being Indian"

SA Compl. at ¶¶ 12-13, 15, 68-75.

    With respect to each individual Plaintiff, the only
assertions relevant to the LAD claims are that each named
Plaintiff "was individually subjected to harassment on the basis
of his being of Indian descent in a manner described in, inter
alia, paragraphs 12-13, 15, and 68-75 herein."  The exact same
allegation is repeated for each Plaintiff.  See SA Compl. at ¶¶
76, 79, 82, and 85.

    (i)    Employees – Count 5

    To survive the motion to dismiss, Plaintiffs must set forth
allegations demonstrating that they are employees for purposes of

the LAD.  The Court notes that the test for determining whether a worker is an employee under the LAD differs from that discussed above with respect to the FLSA.  The following factors are examined when determining whether a worker is an employee under N.J.S.A. 10:5-5f:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation-supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the employer; (10) whether the worker accrues retirement benefits; (11) whether the employer pays social security taxes; and (12) the intention of the parties.

Thomas v. Cty. Of Camden, 386 N.J. Super. 582, 595 (N.J. App. DIv. 2006)(internal citations and quotations omitted).  "'The most important of these factors is the first, the employer's right to control the means and manner of the worker's performance.'" Chrisanthis v. County of Atl., 361 N.J. Super. 448, 455, 825 A.2d 1192 (App. Div. 2003) (quoting Franz v. Raymond Eisenhardt & Sons, Inc., 732 F. Supp. 521, 528 (D.N.J. 1990)).

As an initial matter, this Court notes that the SA Complaint is silent on several of these factors – i.e., the length of time in which the individual has worked; whether there is annual

28

leave; whether the worker accrues retirement benefits; and, whether the "employer" pays social security taxes.  In addition to these "missing" allegations, this Court finds that Plaintiffs' LAD claims cannot withstand the instant motion to dismiss because the SA Complaint contains only generalized and conclusory allegations of "harassment" and other wrongdoing that are insufficient to state a claim with respect to each individual Plaintiff.  The SA Complaint contains no specifics as to the alleged harassment or discrimination that each individual Plaintiff avers to have experienced and the conclusory, generalized allegation do not suffice.  Iqbal, 556 U.S. at 678.

Other Courts have reached similar conclusions when presented with comparable allegations.  For example, in Iwanicki v. Bay State Milling Co., No. 11-1792, 2011 U.S. Dist. LEXIS 140944, at *20-21 (D.N.J. Dec. 7, 2011), the court granted defendant's motion to dismiss where plaintiff asserted a hostile work environment claim pursuant to the LAD and alleged only "generalized behavior without any other details."  For example, plaintiff claimed that defendants, inter alia, harassed him because he did not speak English, intimidated him, and made meritless complaints against him.  Id.  His complaint, however, lacked any "specific comments or threatening conduct that was

directed at him" and was, therefore, insufficient to sustain a
hostile work environment claim.  Id. (citing Doe v. Sizewise
Rentals, LLC, No. 09-3409, 2010 U.S. Dist. LEXIS 124623, 2010 WL
4861138, at *6 (D.N.J. Nov. 22, 2010) (granting a motion to
dismiss because plaintiff's general allegations of "harassment,
backstabbing, depriving minority workers employment, . . . [and]
falsifying evidence ... for the purpose of termination, demotion,
and reprimand" was not enough to sustain a hostile work
environment claim); see also, Ayala v. New Jersey Dept. of Law
and Pub. Safety, 2011 N.J. Super Unpub. LEXIS 2663, at *8-9 (N.J.
App. Div. Oct. 2011)(affirming dismissal of complaint filed by
several plaintiffs, where allegations regarding unlawful failure
to promote, were "bereft of any specifics with regard to each
plaintiff's application for promotion [or] his qualifications").
Based on the above, this Court will grant Defendant's motion to
dismiss on this count.

   (ii)   Independent Contactors – Count 7

   Plaintiffs state that even if they are not deemed
"employees" for purposes of the LAD, they are nevertheless
entitled to the protections of the LAD pursuant to Section 12(l),
which prohibits discriminatory refusals to enter into a contract
or terminations of contracts with independent contractors.  See

J.T.'s Tire Serv. Inc., v. United Rentals North America, Inc., 411 N.J. Super. 236, 240 (N.J. App. Div. 2010)(discussing extension of LAD's protections to refusals to do business with independent contractors based on certain protected characteristics). Plaintiffs correctly point out that the statute has been interpreted as prohibiting discriminatory refusals to continue contracting with an independent contractor, id. at 240-42, but do not present any arguments as to how the SA Complaint properly alleges such a discriminatory refusal to continue to contract. Instead, Plaintiffs conflate a refusal to continue to contract with alleged discrimination during the ongoing execution of a contract, discrimination which the very case cited by Plaintiffs makes clear is outside of the protections of N.J.S.A. 10:5-12(l). Rowan v. Hartford Plaza Ltd., LP., 2013 N.J. Super. Unpub. LEXIS 76, at *25 (N.J. App. Div. 2013)("N.J.S.A. 10:5-12(l) does not apply to discrimination during the ongoing execution of a contract.").

In addition to the lack of coverage under the statute for discrimination during the ongoing execution of a contract, this Court finds that Plaintiffs have failed to plead any facts sufficient to cross the threshold established via Twombly and Iqbal with respect to the alleged discriminatory or harassing

conduct.  With respect to Count 7, Plaintiffs aver that they are all individuals of Indian descent and that through its conduct, Defendant has "breached Plaintiffs' Franchise Agreements and by its actions is causing a constructive or de facto termination of the Franchise Agreements without just cause."  SA Compl. at ¶ 146.  The conduct alleged in support of this claim is, according to Plaintiffs, contained in paragraphs of the SA Complaint discussing Plaintiffs' Indian decent and the averment that Fareed Siddiqui and other managers "harass Plaintiffs on account of their being of Indian decent" via "unannounced visits" and "faux 'investigations." SA Compl. at ¶¶ 70-73.  There are no facts plead with respect to these alleged visits or investigations. Moreover, Plaintiffs contend that Defendant seeks to make "business conditions so hostile that Plaintiffs will each want to terminate their respective franchise agreement; and . . . create artificial and false 'evidence' that Plaintiffs have violated the Franchise Agreement as a way to intimidate Plaintiffs into surrendering their franchise." SA Compl. at ¶ 22.  Plaintiffs have set forth no allegations, however, that they are not currently operating their franchises or plan on terminating their franchise agreements.  In fact, in paragraphs 5-8 of the SA

Complaint, Plaintiffs refer to themselves as currently "in-store operator[s]."

This Court is persuaded that Plaintiffs have merely pleaded legal conclusions unsupported by facts as to the alleged "constructive or de facto termination of the Franchise Agreements," SA Compl. at ¶ 146, which is insufficient to survive the instant motion to dismiss.  See Guirguis v. Movers Specialty Servs., Inc., 346 Fed. Appx. 774, 776 (3d Cir. 2009)("Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently 'permit the court to infer more than the mere possibility of misconduct.'")(quoting Iqbal, 129 S. Ct. at 1950).

**Covenant of Good Faith and Fair Dealing (Count 6)[13]**

All contracts in New Jersey contain an implied covenant of good faith and fair dealing.  Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000).  The covenant operates to ensure that "neither party shall do anything which

---

[13] To the extent Defendant asserts that the sole remedy for certain averments underlying this claim is the alternative dispute resolution procedure set forth in the FA, that issue has not been asserted to this Court via motion and will not be decided here.

will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 690 A.2d 575, 587 (1997).  "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." <u>Black Horse Lane Assoc., L.P.</u>, 228 F.3d at 288.  In addition "[t]he Supreme Court of New Jersey has clearly held that bad motive is 'essential' to a claim for breach of the implied covenant of good faith and fair dealing." <u>Vasaturo Bros. v. Alimenta Trading-USA</u>, No. 09-2049, 2011 U.S. Dist. LEXIS 80026, at * 13-14 (D.N.J. July 22, 2011).

Plaintiffs allege that Defendant has violated the implied covenant by:

- Failing to properly maintain the franchised stores and respond Plaintiffs requests for service;
- Unfairly burdening Plaintiffs though their actions in negotiating vendor contracts;
- Refusing to properly train Plaintiffs on equipment;
- Demanding maintenance of minimum credit balances despite audit irregularities perpetuated by Defendants; and
- Refusal to pay Plaintiffs' promotional incentives and earned "bill backs."

SA Compl. at ¶¶ 134-138.

Defendant responds by arguing that Plaintiffs' allegations fail to support this claim because Plaintiffs do not identify the

terms of the contract out of which the implied covenant arises and because the actual language of the FA does not support Plaintiffs' allegations.[14]  For example, Defendant argues that the FA provides that Plaintiffs are responsible for all maintenance and repairs related to their stores and equipment, and that the implied covenant claim seeks to shift Plaintiffs' obligations to Defendant.

This Court finds that Plaintiffs have adequately set forth allegations in the SA Complaint averring that Defendant's actions

---

[14] Defendant moves, in the alternative, to strike paragraphs 134-138 of SA Complaint [Docket No. 62].  They do not, however, present separate grounds for striking these provisions separate from their arguments in favor of their motion to dismiss. As stated clearly by another court in this District:

> The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation.
>
> However, motions to strike are usually viewed with disfavor and will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.

Rivera v. Ralph F. Casale & Assocs., LLC, No. 13-587, 2014 U.S. Dist. LEXIS 77820, at *8-9 (D.N.J. June 9, 2014)(internal quotations and citations omitted).  Because the allegations at issue have not been shown by Defendant to meet the threshold of prejudicial or confusing, this Court will deny the motion to strike without prejudice.  That said, this Court will not impose sanctions as requested by Plaintiffs [Docket No. 70].

have the "effect of destroying or injuring the right of the other party to recievi3e the fruits of the contract." <u>Sons of Thunder, Inc.</u>, 690 A.2d at 587.  First, unlike, cases like <u>Iwanicki v. Bay State Mill. Co.</u>, No. 11-1792, 2011 U.S. Dist. LEXIS 140944 (D.N.J. Dec. 7, 2011), cited by Defendant, there is a valid underlying contract between the parties - the FA.  While Plaintiffs do not cite the specific paragraphs of the FA in their SA Complaint, they do identify contractual provisions grounded in the FA.  <u>See</u> <u>e.g.</u>, SA Comp. ¶¶ 17-22.  Finally, Plaintiffs have asserted the requisite "bad motive" in that they contend that Defendant's alleged breach of the duty of good faith and fair dealing is part of an attempt to create a hostile environment for Plaintiffs and to intimidate them into surrendering their franchises, resulting in an alleged windfall for Defendant.  <u>See</u> SA Compl. at ¶ 22.  This Court finds these allegations sufficient to survive the instant motion to dismiss.

### c. **New Jersey Franchise Practices Act (Count 8)**

The New Jersey Franchise Practices Act, ("NJFPA"), N.J.S.A., 56:10-5 <u>et</u> <u>seq</u>., was enacted with the general objective of "protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief

against franchisors who violate the Act." <u>Kubis & Perszyk</u>

<u>Assocs. v. Sun Microsystems</u>, 146 N.J. 176, 193 (1996).  Pursuant

to this purpose, the NJFPA provides that "[i]t shall be a

violation of this act for a franchisor to terminate, cancel or

fail to renew a franchise without good cause." N.J.S.A. 56:10-5.

In addition, the NJFPA prohibits the imposition of "unreasonable

standards of performance upon a franchisee." N.J.S.A. 56:10-7e

Plaintiffs appear to assert claims under the NJFPA under two

separate theories: 1) that Defendant "imposed unreasonable

standards of performance upon each Plaintiff in violation of the

[NJFPA]" and, 2) Defendant "has breached Plaintiffs' Franchise

Agreements and by its actions is causing a constructive or de

facto termination of the Franchise Agreements without just

cause." SA Compl. at ¶¶ 162-163.

Defendant argues that Plaintiffs are still admitted "in

store operators" of the franchises and, therefore, cannot assert

a claim for constructive termination as their franchises are

still in operation.  Defendant also argues that Plaintiffs'

assertion that Defendants "imposed unreasonable standards of

performance" is too conclusory and constitutes a mere label and

conclusion insufficient under <u>Iqbal</u>.  This Court will address

each argument in turn.

(i)      _Constructive Termination_

To the extent Plaintiffs seek to assert a claim under the NJFPA for "constructive termination," this Court agrees with the reasoning set forth in Pai v. DRX Urgent Car LLC, No. 13-4333, 2014 U.S. Dist. LEXIS 27071 (D.N.J. Mar. 4, 2014), which holds that there can be no NJFPA claim for constructive termination where the franchise is still in operation.  In Pai, the court, interpreting the Supreme Court's decision in Mac's Shell Service v. Shell Oil Prods. Co., 599 U.S. 175 (2010), held that "a claim for constructive termination by a franchisee requires that a franchisee no longer be in operation."  In so holding, the Pai court found attempts to distinguish Mac's Shell, which was based on the Petroleum Marketing Practices Act rather than the NJFPA, unavailing because "both statutes share the same purpose of protecting franchisees from termination without cause."  Pai, at *22.

In addition, the Pai court found the same case cited by Plaintiffs to this Court, Maintainco Inc. V. Mitsubishi Caterpillar Forklift America, Inc., 408 N.J. Super. 461 (App. Div. 2009), wherein the Appellate Division found that claims for constructive termination exist under the NJFPA, was "unpersuasive authority for the proposition that a franchisee that is currently

38

operating, accepting the benefits of the franchise, and making a profit can bring a claim for constructive termination." Pai, at 25. Because the Plaintiffs are still operating their franchises and are still gaining a profit from their stores (albeit a profit they allege has been diminished through Defendant's conduct – see SA Compl. at ¶ 20), this Court finds that Plaintiffs' NJFPA claim based on alleged constructive termination should be dismissed.

(ii)    *Unreasonable Standards*

With respect to Plaintiffs' "unreasonable standards assertions," Defendant asserts that Plaintiffs allegations are too conclusory.  In response, Plaintiffs state that they are expected to assume all responsibilities with regards to maintenance yet Defendant controls the the frequency and methods of repairs leaving Plaintiffs unable to perform their franchisee functions as a result of Defendants actions.

The NJFPA prohibits a franchisor from "impos[ing] unreasonable standards of performance upon a franchisee." N.J.S.A. 56:10-7(e).  While the statute does not define the term "unreasonable standard," other courts have found a franchisor to be imposing "unreasonable standards" under the NJFPA where they have, for example, required a franchisee to operate at a substantial financial loss while the franchisor implements a new

and unproven market strategy, or set franchisees up for failure
so that the franchise agreements could be terminated.  See King
v. GNC Franchising, Inc., No. 04-5125, 2006 U.S. Dist. LEXIS
76986, at *11-13 (D.N.J. Oct. 23, 2006)(discussing cases).

Plaintiffs contend that their allegations regarding their
maintenance contracts with Defendant constitute such
"unreasonable standards" in that Plaintiffs assume all
responsibility for maintenance of their franchise per the FA, but
are then required to or expected to purchase maintenance
contracts from the Defendant, which leave them at the mercy of
Defendant when repairs are needed as the maintenance calls go
unanswered.  This, they allege, causes Plaintiffs to lose profits
due to spoiled product. Plaintiffs also allege that Defendant has
an unreasonable policy to not replace equipment in stores that
gross below a certain amount annually.  See SA Compl. at ¶¶ 35-
40.

This Court finds that, in accepting as true all well-pled
factual allegations, as well as all reasonable inferences that
can be drawn from them, and construing those allegations in the
light most favorable to the Plaintiffs, see Bistrian, 696 F.3d at
358 n.1, the allegations in the SA Complaint are sufficient to
demonstrate entitlement to relief. See Twombly, 550 U.S. at 555.

40

The NJFPA claim based on the imposition of unreasonable standards will survive the instant motion.

### d. **Leave to Amend**

In their opposition brief, Plaintiffs request the opportunity to file a "curative amendment" if this Court finds that the SA Complaint is "vulnerable to a 12(b)(6) dismissal." Pls.' Opp. Br. at 25.  Plaintiffs have already filed both First and Second Amended Complaints in this matter.  Where a plaintiff has already amended the complaint or defendants have filed a responsive pleading, the plaintiff may further amend the complaint only with leave of the court. Fed. R. Civ. P. 15(a); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  Leave to amend is inappropriate where it would cause undue delay, the amendment is motivated by bad faith or a dilatory motive, the amendment would cause prejudice, or the amendment is futile.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted under the Rule 12(b)(6) standard. Id. (citing 3 Moore's at ¶ 15.08[4], at 15-81 (3d ed. 2000)).

41

At this juncture, this Court cannot assess Plaintiffs' proposed amendments because there has been no submission of a proposed amended complaint.  If Plaintiffs seek to file an amended complaint, they will have a third and _final_ opportunity to do so by filing a formal motion for leave to amend accompanied by the proposed third amended complaint. See Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc., 482 F.3d 247, 252 (3d Cir. 2007)("to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile.")

## IV.  Conclusion

For the reasons discussed above, Defendant's motion to dismiss will be granted in part and denied in part and Defendant's motion to strike is denied.  If Plaintiffs intend to seek leave to amend, they must file the requisite motion and proposed third amended complaint within thirty days.  An appropriate Order will issue this date.

> s/Renée Marie Bumb
> RENÉE MARIE BUMB
> United States District Judge

Dated:     August 5, 2014

42